MAYO A. SHATTUCK & another, trustees, *vs.* WOOD
MEMORIAL HOME, INC., & others.

Suffolk.    March 5, 1945. — May 1, 1946.

Present: FIELD, C.J. LUMMUS, RONAN, WILKINS, & SPALDING, JJ.

*Trust*, Charitable trust, Constructive trust.    *Equity Jurisdiction*, To
    enforce trust.    *Equity Pleading and Practice*, Parties, Answer, Decree.

An unauthorized transfer by a trustee to a charitable corporation of
    property held by him on a charitable trust must be set aside even
    after the lapse of twenty-eight years and without regard to the effi-
    ciency of the corporation's management of the property.
A succeeding trustee of a charitable trust was a proper party to maintain
    a suit in equity to set aside an unauthorized transfer of the trust
    property by the original trustee.
Testamentary trustees, to whom the will gave land and money in trust
    to establish on the land, if they thought it practicable, "institutions
    [having specified names] providing a home for destitute convalescents
    and a home for needy incurables . . . under such rules and regula-
    tions as they deem wise and expedient," did not comply with their
    duty under the will and acted without authority in transferring all
    the trust property to a charitable corporation which they incorporated
    without mention in the incorporation papers of the will or its provision,
    whose name was different from those specified in the will, whose pur-
    poses were to establish and conduct "a home for incurables" and "a
    home for convalescents" and whose organization was such that the
    trustees, even though holding offices therein, were in a minority in its
    control and management and in effect surrendered their powers and
    discretion respecting the accomplishment of the testator's wishes to
    a majority not selected by him.
No error appeared in a suit in equity in a failure of the trial court to
    uphold a defence not set up in the answer.
A charitable corporation, which without consideration had taken a con-
    veyance of property from a testamentary trustee with knowledge of
    the terms of the will, wherein no authority to make such conveyance
    was conferred on the trustee, was properly ordered in equity to restore
    to a succeeding trustee such of the property as was then held by it
    and to account to him for its expenditures.
In a suit in equity in which the plaintiff sought relief against two de-
    fendants in the alternative, a decree properly giving relief against
    only one of the defendants should not merely have been silent as to
    the other defendant but should have contained an express dismissal
    of the bill as to him.

PETITION IN EQUITY, filed in the Probate Court for the county of Suffolk on June 23, 1943.

The case was heard by *Dillon*, J.

*R. C. Evarts*, (*J. D. Hanify* with him,) for the respondent Wood Memorial Home, Inc.

*H. D. McLellan*, for the respondents executors of the will of Robert F. Herrick.

*M. A. Shattuck*, (*W. Powers & J. B. Dolan* with him,) for the petitioners.

WILKINS, J.    This is a petition in the Probate Court by succeeding trustees under the will of Frank Wood, late of Boston, deceased, against the respondent Wood Memorial Home, Inc., a Massachusetts charitable corporation, for the restoration of assets and for an accounting; or, in the alternative, against the respondents executors of the will of Robert F. Herrick, deceased, and against "the estate of Lillian Neale (Wood) Bradway, late of Pasadena, California," Robert F. Herrick and Lillian Neale (Wood) Bradway having been the original trustees under the will of Frank Wood, for the payment of an amount equal to the value of the property held by the corporation and the total of all sums expended by it.    The Attorney General was also a party respondent.    No service could be made upon representatives of the Bradway estate.    The judge entered a decree, which ordered the corporation "to restore all assets now held by it," and to account for its expenditures, to the petitioners.    The decree made no reference to the executors of the Herrick will or to the Bradway estate.    The corporation and the executors of the Herrick will appealed.    The judge made a report of the material facts found by him, and the evidence is reported.    G. L. (Ter. Ed.) c. 215, §§ 11, 18. We are not limited to the facts found by the judge, but from the evidence may find other facts, and may draw our own inferences, whatever may have been those drawn by the judge.    *Lowell Bar Association* v. *Loeb*, 315 Mass. 176, 178. *Malone* v. *Walsh*, 315 Mass. 484, 490.    *Counelis* v. *Counelis*, 315 Mass. 694, 696.    *Cooperstein* v. *Bogas*, 317 Mass. 341, 345.    *Jurewicz* v. *Jurewicz*, 317 Mass. 512, 513.    *Ziegler* v. *McKinlay*, 318 Mass. 765, 767.    There is no question of

credibility of witnesses, as the facts are undisputed. *Mac-Lennan* v. *MacLennan*, 316 Mass. 593, 595. *Kerwin* v. *Donaghy*, 317 Mass. 559, 565. See *Webber* v. *Rosenberg*, 318 Mass. 768.

The testator died March 27, 1914. His will, which was executed January 15, 1914, and was allowed April 16, 1914, provided: "Nineteenth: I give, devise and bequeath to Lillian Neale Wood and Emma J. Fitz the sum of Twenty-five Thousand (25,000) dollars, but in trust nevertheless for the following purposes, namely: To safely invest and reinvest the same and to pay over the net income therefrom for the benefit of the Children's Home located on North Street, Walpole, Massachusetts, but should the said Home at any time cease to exist, I direct that said principal sum shall be paid over to the trustees named in the Twentieth clause of this my will, to be held by the said trustees in the same manner and for the same uses and purposes set forth in said Twentieth clause. Twentieth: Believing that great good can be accomplished by the establishment of a home for needy and indigent convalescents and a home for incurables, it is my desire to found such institutions in my life time, but should I for any reason fail in the accomplishment of this purpose, I hereby give, devise and bequeath to said Lillian Neale Wood and Robert F. Herrick of Milton, Massachusetts, all my land on Morton Street in Dorchester aforesaid, containing forty acres more or less, and the sum of Fifty Thousand (50,000) dollars in money, but in trust nevertheless for the following purposes, namely: To carefully and thoroughly consider the practicability of such organizations, and if, after full and careful consideration, they deem it practicable and desirable, they are to use said money in founding and establishing institutions providing a home for destitute convalescents and a home for needy incurables, or either of them, upon the land above devised on Morton Street, under such rules and regulations as they deem wise and expedient, to be known as the Convalescents Home and the Home for Incurables. . . . Should said trustees deem it inexpedient and impracticable to establish such Home or Homes as above provided, after taking time for full con-

sideration of the matter but not to exceed three years, I hereby direct them to divide the land and money given them for said purpose among such beneficiaries of this will in such amounts as they may in their judgment deem advisable and expedient. Twenty-first: All the rest and residue of my property and estate, real, personal or mixed, of which I shall die seized and possessed or to which I may be entitled at the time of my decease, I give, devise and bequeath to the Convalescents Home and the Home for Incurables, if either or both of them are established as above provided, but should my trustees deem it inadvisable to found one or both of said Homes, then to the trustees hereinbefore named, to be divided among such beneficiaries herein named in such amounts as they in the exercise of their discretion may deem advisable."

On April 16, 1914, Robert F. Herrick and Lillian Neale Wood, the testator's widow, were appointed and qualified as executors. On February 14, 1916, they qualified as trustees under the twentieth and twenty-first clauses. On February 29, 1916, the widow, who had married Charles A. Bradway, and was then known as Lillian N. Bradway, qualified as sole trustee under the nineteenth clause, Emma J. Fitz having declined to serve.

The testator in his lifetime did not found either of the "institutions" referred to in the twentieth clause. Before March 26, 1915, Mr. Herrick and Mrs. Wood carefully and thoroughly considered "the practicability of such organizations," and "after full and careful consideration" deemed it "practicable and desirable" to form a corporation to provide the homes. On that date Wood Memorial Home, Inc., was incorporated. The incorporators were Mrs. Wood, Mr. Herrick, Stewart C. Woodworth and two other law associates of Mr. Herrick, as well as Alice T. Herrick (the wife of Mr. Herrick), and Emma J. Fitz. The charter recites that the corporation was "for the purpose of establishing, maintaining and operating a home for incurables, and for the further purpose of establishing, maintaining and operating a home for convalescents. For the purpose of doing all or any other acts necessary or proper in connection

with the foregoing purposes, provided that none of the funds or property of the corporation shall be paid to any one as dividends or profits; and for the purpose, upon the dissolution of the corporation, of transferring or conveying any or all of the property of the corporation which may be legally so transferred or conveyed to such other charitable corporation or corporations organized under the laws of Massachusetts, only as may be designated by vote of the members."

The original board of trustees consisted of Mrs. Wood, Mr. Herrick, Mrs. Herrick, Mr. Woodworth, and Emma J. Fitz. Mrs. Wood (later Mrs. Bradway) was president from the beginning until her death in 1938. Mr. Bradway then became president. Mr. Herrick was treasurer for a time and was succeeded by Mr. Bradway, who early became a member of the board of trustees as well. Mr. and Mrs. Bradway moved to California in 1927, and in that year Edward Kronvall of Springfield became treasurer. Mr. Herrick ceased to be a member of the board of trustees in 1923. Mr. Woodworth served as secretary from the beginning. Other changes in the board and in the officers need not be recited.

On March 31, 1915, Mrs. Wood and Mr. Herrick by quitclaim deed conveyed to the corporation the testator's real estate on Morton Street. Although they had not yet qualified by giving bond, the deed described the grantors as "Trustees, as designated by the twentieth and twenty-first clauses of said will." Mrs. Wood also executed the deed in her individual capacity. The deed recited, "Whereas, Frank Wood of Boston, by his last will admitted to probate by the Probate Court of the County of Suffolk April 16, 1914, did by the twentieth clause of said will specifically devise to Lillian N. Wood, and Robert F. Herrick all his real estate situated on Morton Street, Dorchester, Massachusetts, in trust for the following purposes, viz: — to carefully and thoroughly consider the practicability of the foundation of a Home for Convalescents and a Home for Incurables upon the land devised on Morton Street; and Whereas, the said Lillian N. Wood and Robert F. Herrick

have considered the foundation of such a Home, and have deemed it practical, and have in accordance with said will caused to be incorporated and established under the laws of Massachusetts a charitable corporation by the name of 'Wood Memorial Home, Inc.' for the purpose of providing a Home for Convalescents and a Home for Incurables to effectuate the intention of the testator . . . ." We treat this as a deed of the grantors as trustees. See *Little* v. *Little,* 161 Mass. 188, 202; *Coates* v. *Lunt,* 213 Mass. 401, 404; *Massachusetts Institute of Technology* v. *Attorney General,* 235 Mass. 288, 293–294.

Between 1916 and June 7, 1920, the executors transferred direct to the corporation cash and securities to an amount in excess of $400,000. At some time before May 20, 1938, the Children's Home referred to in the nineteenth clause of the will ceased to exist, and on that date Mrs. Bradway as trustee under that clause paid $80,897.88 to the corporation. Everything so transferred or paid may be traced into the hands of the corporation, and constitutes the entire assets of the corporation, which gave no consideration. As a result of judicious investment the assets at the time of the hearing amounted to $2,860,000. The corporation incurred no expenditures except for taxes and administration expenses. The officers and trustees never received compensation.

The corporation did not erect nor acquire nor cause to be erected or acquired by it any home for needy and indigent convalescents or any home for incurables. Its main reason for not doing so was that it was not deemed wise to build until through accretions a sufficient sum was available which might be reasonably expected to support the homes. This policy had at least the informal approval of three successive Attorneys General. The answer of the corporation states that it "believes with careful management there are now sufficient funds to establish and maintain a home for destitute convalescents and a home for needy incurables or either of them if said home is erected near and maintained in collaboration with a good general hospital in the city of Boston. That this belief is based on a thorough study of

all the circumstances and on the advice of persons qualified in medicine and hospital and philanthropic administration as to the most effective method of carrying out the testator's intent with the funds available. That to this end this respondent has formed a plan of operating in conjunction with the Massachusetts General Hospital. That as the land on Morton Street is not near any general hospital, it is not an appropriate location for the home or homes intended by the testator; that this respondent has been offered what it believes to be a fair and adequate price for said land and has filed a petition for leave to sell the same, which petition is now pending before the Supreme Judicial Court for Suffolk County." It appears from that petition, which was filed in 1943, that "It has been deemed impractical to use the land for the purpose of establishing a home thereon, and in 1942 the members . . . voted that it would be desirable to sell this property. . . . The petitioner believes that the land is of no value to it for the purpose of establishing a home and that when a home is to be established it should be built near one of the recognized 'hospital districts' in Boston."

The executors filed five accounts, the last being a final account, which were allowed October 25, 1920. On July 19, 1938, the first and final account of the trustee under the nineteenth clause was allowed. The trustees under the twentieth and twenty-first clauses filed no inventory and rendered no account.

Mrs. Bradway died at some time between July 9, 1938, and August 1, 1938, when her will was admitted to probate in Los Angeles County Probate Court. Mr. Herrick died October 13, 1942. The petitioners were appointed succeeding trustees under the testator's will on May 5, 1943, qualified as such on May 10, 1943, and filed the present petition on June 23, 1943.

If the trustees were authorized to transfer the trust property to the corporation, any complaint against the administration of the trust after such transfer must come from the Attorney General exclusively. *Dillaway* v. *Burton,* 256 Mass. 568, 573–574. *Judkins* v. *Hyannis Public Library Association,* 302 Mass. 425, 427. *Elias* v. *Steffo,* 310 Mass.

280, 284. On the other hand, if the trustees were not so authorized, the transfer must be set aside wholly without regard to the efficiency in the administration of the trust by the corporation. Steps to this end appropriately may be taken by the petitioners as succeeding trustees. *Ashton* v. *Atlantic Bank*, 3 Allen, 217. *Smith* v. *Burgess*, 133 Mass. 511. *Bennett* v. *Pierce*, 188 Mass. 186. *Sargent* v. *Wood*, 196 Mass. 1, 4–5. *State Street Trust Co.* v. *Walker*, 259 Mass. 578. *Malden Trust Co.* v. *Brooks*, 276 Mass. 464, 471; *S. C.* 291 Mass. 273, 280. *Locke* v. *Old Colony Trust Co.* 289 Mass. 245, 253–254. *Tierney* v. *Coolidge*, 308 Mass. 255, 260. The lapse of many years is no bar to such action. "Generally it is true that no length of time of diversion from the plain provisions of a charitable foundation will prevent its restoration to its true purpose." *Trustees of Andover Seminary* v. *Visitors*, 253 Mass. 256, 298. *Boxford Religious Society* v. *Harriman*, 125 Mass. 321, 329.

The determination by the trustees within the specified three year period that it was "practicable and desirable" to establish the homes constituted an acceptance of the trust. *Drury* v. *Natick*, 10 Allen, 169, 182–183. *Cary Library* v. *Bliss*, 151 Mass. 364, 375–376. *Attorney General* v. *Lowell*, 246 Mass. 312, 323. Thereafter they could not resign without court approval. R. L. c. 147, § 12. See now G. L. (Ter. Ed.) c. 203, § 13, as appearing in St. 1943, c. 201, § 1. The will made no provision for the appointment of their successors. Accordingly, that power rested with the courts. *Mahoney* v. *Nollman*, 309 Mass. 522, 526. R. L. c. 147, § 5. See now G. L. (Ter. Ed.) c. 203, § 5.

The respondents allege in their answers and in substance argue that "the incorporation of said Wood Memorial Home, Inc. constituted the founding and establishing of the homes provided for in said will and carried out the terms of said trust and the dominant intent of the testator." On the other hand, the petitioners contend in general that the creation of a corporation was inconsistent with the testator's intent as expressed in his will, and in particular that the actual corporation created was not in

accord with such intent. We do not consider the general·
contention, because we are of opinion that the acts of the
trustees in creating Wood Memorial Home, Inc., were not
a performance of their duties under the will. The trust as
accepted called for two homes upon the land on Morton
Street. These were "to be known as the Convalescents
Home and the Home for Incurables," the former for "needy
and indigent" or "destitute" convalescents, the latter for
"needy" incurables. The charter and by-laws of the cor-
poration, which bore a different name, omitted reference to
these requirements, or, indeed, to the will at all. We need
not intimate whether such omission standing alone would
be fatal. The by-laws provided that the members should
be the original subscribers of the agreement of association
and such other persons as should be elected from time to
time by a two-thirds vote of the members, and that "the
entire management of the affairs of the corporation and the
control of its property" should be vested in a board of five
trustees, who should be elected for one year terms by the
members from among their number, and who should be
subject to removal by a three-fifths vote of the board. The
board was to elect annually a president, who was subject
to removal by a three-fifths vote of the board. The mem-
bers were to elect annually from their number a secretary
and a treasurer, who were subject to removal by a three-
fourths vote of the members. The treasurer was to "have
the care of all deeds, certificates, securities, money and
other property or evidences of property belonging to the
corporation," and, subject to the control and direction of
the board, was to have power "to invest, and re-invest the
money, funds and other property belonging to the corpora-
tion, and for that purpose, in the name and on behalf of
the corporation to assign, sell and transfer any of its securi-
ties or other property." The by-laws could be amended
by a two-thirds vote of the members.

From the outset, therefore, the two trustees named in
the will, whatever may have been their actual influence as
long as they served, were only a minority of the board of
trustees. The judgment of the two individuals in whom

the testator reposed his confidence, and who were not empowered to designate successors, was subordinated to the judgment of others not selected by him and possibly wholly unknown to him. A majority of the board constituted a quorum, and thus could take action even in the absence of the two trustees named in the will. The terms of the members of the board were subject to annual elections by the members and to termination by removal by the board itself. In the meetings of members the trustees named in the will formed an even smaller minority. The number of members, originally seven, could be increased indefinitely by a two-thirds vote of the members.

The respondents contend that the testator must have contemplated the formation of a corporation and must be taken to have known that there must be seven incorporators. See G. L. (Ter. Ed.) c. 180, § 1, formerly R. L. c. 125, § 1. The short answer to this is that, even assuming that some form of incorporation was allowable, there was nothing in the will permitting the effacement of the named trustees or the delegation of their powers. Indeed, notwithstanding the highminded purposes of the trustees, their own compliance with the mandate of the will was limited to the determination within the three year period that it was "practicable and desirable" to found and establish institutions. The mere formation of the corporation, even if permissible, would have been only one of the duties of the trustees, who further were to found and establish institutions providing homes "under such rules and regulations as they deem wise and expedient." No rules or regulations were made by the trustees, or by anyone. The formation of the corporation cannot be treated as a compliance with that requirement, nor can the by-laws of the corporation. The "rules and regulations" contemplated by the testator had to do with the determination of such matters as the capacity of the homes, the selection of patients, the types of "incurable" diseases to be treated, the definition of "convalescents," the permissible duration of the stay of patients in the homes, the charge, if any, to be made to patients, and the nature of the provision for medical, nurs-

ing, and housekeeping care. Those duties, imposed upon the trustees and upon none other, were an important condition of the gift, and were not incidental and administrative details. See *Boston* v. *Curley,* 276 Mass. 549, 559; *Milbank* v. *J. C. Littlefield, Inc.* 310 Mass. 55, 62.

It is unnecessary to consider the petitioners' further contention that the corporation did not conform to the testator's intent on the ground that the charter, in the event of dissolution, undertook to confer upon the members the power to transfer the "property of the corporation which may be legally so transferred" to such Massachusetts charitable corporations as they might designate. See *Crawford* v. *Nies,* 224 Mass. 474, 486.

The case at bar falls within the authority of numerous decisions in this Commonwealth and elsewhere. *Harvard College* v. *Society for Promoting Theological Education,* 3 Gray, 280. *Stone* v. *Framingham,* 109 Mass. 303. *Fellows* v. *Miner,* 119 Mass. 541, 545–546. *Winthrop* v. *Attorney General,* 128 Mass. 258. *Morville* v. *Fowle,* 144 Mass. 109. *Cary Library* v. *Bliss,* 151 Mass. 364. *Harvard College* v. *Attorney General,* 228 Mass. 396, 410. *Eliot* v. *Trinity Church,* 232 Mass. 517, 522. *Trustees of Andover Seminary* v. *Visitors,* 253 Mass. 256, 293–294, 297. *Adams* v. *Plunkett,* 274 Mass. 453. *Jordan* v. *Landis,* 128 Fla. 604, 615, 617. *Garesche* v. *Levering Investment Co.* 146 Mo. 436. *Matter of Kirkman,* 143 Misc. (N. Y.) 342, 347. *Meck* v. *Behrens,* 141 Wash. 676, 682, 683. Scott on Trusts, §§ 171.1, 379. Cases are distinguishable where the intent of the testator permitted the type of corporation which was in fact formed. See *Trustees of Phillips Academy* v. *King,* 12 Mass. 546, 555; *Sanderson* v. *White,* 18 Pick. 328, 336, 337; *Nelson* v. *Cushing,* 2 Cush. 519, 527; *Ware* v. *Fitchburg,* 200 Mass. 61; *Boston* v. *Curley,* 276 Mass. 549, 557–558; *Curtis* v. *First Church in Charlestown,* 285 Mass. 73, 80. This is not a situation where literal execution of the testator's design has become impractical or inexpedient. See *Milton* v. *Attorney General,* 314 Mass. 234, 238, and cases cited.

The respondent corporation contends that under the twentieth clause the trustees were under no duty to build a

home or homes, but were "to use said money in founding and establishing institutions providing" homes; and that under the twenty-first clause the gift was in the first instance "to the Convalescents Home and the Home for Incurables, if either or both of them are established as above provided." We do not reach the consideration of these arguments. The questions before us are not what institutions might have been founded or established, and what, if any, corporation, and with what powers, might have been formed to carry out the testator's wishes, but whether what the trustees in fact did, and whether the one corporation which was actually formed and with the powers and direction which it actually had, accorded with the provisions of the will.

The respondents argue that the allowance of the accounts of the executors is a bar to the present petition. This defence was not set up in the answers, and there was no error in failing to uphold any contention based upon it. *New York Bank Note Co.* v. *Kidder Press Manuf. Co.* 192 Mass. 391, 404. *Albiani* v. *Evening Traveler Co.* 220 Mass. 20, 26. *Coughlin* v. *Coughlin,* 312 Mass. 452, 454, and cases cited.

As the trust property could be traced to the corporation, which gave no value and took with knowledge of the terms of the will, the decree was right in requiring restoration of the property and in ordering an accounting. *Loring* v. *Brodie,* 134 Mass. 453, 459. *Morville* v. *Fowle,* 144 Mass. 109. *Otis* v. *Otis,* 167 Mass. 245, 246. *Woodard* v. *Woodard,* 216 Mass. 1. *Moore* v. *Mansfield,* 248 Mass. 210. *Tingley* v. *North Middlesex Savings Bank,* 266 Mass. 337, 340. *Jones* v. *Jones,* 297 Mass. 198, 211. *Tierney* v. *Coolidge,* 308 Mass. 255, 259. *Phelps* v. *Mattoon,* 310 Mass. 97, 104. Am. Law Inst. Restatement: Trusts, §§ 288, 289. Scott on Trusts, §§ 288, 289.

The prayer for relief against the Herrick and Bradway estates is expressed in an alternative which, as the case eventuates, is inapplicable. The decree made no reference to those estates. The decree should be modified by including an express dismissal of the petition as against the respondents executors of the Herrick will and as against the Bradway

estate, and as so modified it is affirmed. Costs and expenses of these appeals may be allowed to the respondents or their counsel in the discretion of the Probate Court.

*So ordered.*