GARALD K. RICHARDSON, individually and as trustee, *vs.*
BRADLEE F. CLARKE & another, trustees,[1] & others.

Middlesex.    February 9, 1977. — June 30, 1977.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Trust,* Business trust, Amendment of trust instrument, Control by ma-
jority of trustees.  *Fiduciary.*

An amendment to a business trust instrument permitting the power of
the business trustees to be exercised by a majority of them did not
deprive the trustees of a testamentary trust, having as its principal
asset the shares of the business trust, of their control over the assets
of the testamentary trust. [862-863]
In an action seeking to nullify certain agreements executed by two of
three trustees of a business trust, evidence warranted a finding that
the third trustee was adequately consulted regarding the proposed
transactions and encouraged to participate in the negotiations. [863]

CIVIL ACTION commenced in the Probate Court for the
county of Middlesex on July 31, 1974.

The case was heard by *Perera, J.,* on motions for sum-
mary judgment.

The Supreme Judicial Court granted a request for
direct appellate review.

*Donald J. MacRae* for the plaintiff.

*Hanson S. Reynolds* for Bradlee F. Clarke & another,
trustees, & others.

*Steven J. Cohen* for Louis DiGiovanni.

*Edward M. Dangel,* guardian ad litem, submitted a
brief.

HENNESSEY, C.J.    The plaintiff initiated this action in
the Probate Court seeking to nullify two leases and a
purchase and sale agreement executed by two of the three

---

[1] Trustees under the will of Joseph Clarke and trustees of the Brattle
Craigie Trust.

trustees of the Brattle Craigie Trust, a Massachusetts business trust. The action was heard on cross motions for summary judgment presenting, inter alia, the issues which are before us in this appeal: (1) whether the powers of the business trustees could validly be executed by a majority of them pursuant to a 1942 amendment to the trust instrument, and (2) whether the defendant trustees had made appropriate efforts to notify and consult with the plaintiff, their cotrustee, regarding these agreements. The Probate Court judge entered final judgment for the defendants, and the plaintiff appealed.[2] We affirm the judgment below.

The Brattle Craigie Trust was created in 1913 by Joseph Clarke and two other individuals under a declaration of trust for the purpose of "purchasing, improving, holding, managing, disposing and otherwise dealing with real estate." Joseph Clarke died in 1942, at which time he was the sole owner of all the outstanding shares of common stock of the Brattle Craigie Trust. By his will he created a testamentary trust, the principal asset of which consisted of the shares of the business trust.

At the time of Clarke's death, the surviving business trustees were his wife and son. In February, 1942, Clarke's son resigned his position as a business trustee, and the plaintiff and another individual were appointed as business trustees. On September 14, 1942, Clarke's son was reappointed as a business trustee, bringing the total number of business trustees to four as authorized by an amendment to the business trust instrument adopted the same day by the shareholders. At the time this action was brought there were three business trustees, Clarke's widow, son, and the plaintiff, the fourth trustee having died and not been replaced. In 1975, Clarke's widow resigned, and another business trustee was appointed, keeping the total number at three.

By his will, Clarke appointed his widow, son, and the plaintiff as his executors and appointed his widow, son,

---

[2] A brief was also filed in this court by a guardian ad litem.

the plaintiff and the person who subsequently became the fourth business trustee as his testamentary trustees. This latter individual died in 1967, and, in 1975, the individual who became the third business trustee along with Clarke's son and the plaintiff was appointed as a testamentary trustee by Clarke's widow, pursuant to the terms of his will.

In September, 1942, by a unanimous vote of the executors of the will of Joseph Clarke acting as shareholders[3] and the business trustees, the instrument creating the Brattle Craigie Trust was amended to permit the powers of the business trustees to be exercised by a majority of them. The plaintiff, who concurred in this unanimous vote, now contends that the amendment is invalid because it impermissibly deprives the testamentary trustees of their power and duty to control the operation of the business trust.

The plaintiff's argument is essentially that the business trust became merely a subordinate instrumentality of the testamentary trust when the business trust shares were transferred to the testamentary trustees. We find no basis in law or in the testator's will for such a contention. There is no dispute that generally a trust instrument may be amended in accordance with its terms by a unanimous vote of all holders of the beneficial interests (here, the shareholders). See, e.g., *Commissioner of Corps. & Taxation* v. *Second Nat'l Bank*, 308 Mass. 1 (1941). Nor is there any dispute that generally a trust instrument may provide for majority control. See, e.g., *Commissioner of Corps. & Taxation* v. *Springfield*, 321 Mass. 31, 43 (1947); *Horwitz* v. *Horwitz*, 3 Mass. App. Ct. 753 (1975); 3 A. Scott, Trusts § 194 (3d ed. 1967); 3 G. Newhall, Settlement of Estates § 422 (4th ed. 1958); Annot., Massachusetts or Business Trusts, 156 A.L.R. 22, 145 (1945). Business trusts possess many of the attributes of corporations and for that reason cannot be governed solely by the rules

---

[3] The amendment vote took place prior to the formal appointment of the testamentary trustees.

Richardson *v.* Clarke.

which have evolved for traditional trusts. See, e.g., *Swartz* v. *Sher*, 344 Mass. 636 (1962); *State St. Trust Co.* v. *Hall*, 311 Mass. 299 (1942); *Bomeisler* v. *M. Jacobson & Sons Trust*, 118 F.2d 261 (1st Cir. 1941); C.A. Peairs, Business Corporations § 203 (2d ed. 1971). It is appropriate that business trust instruments should be capable of amendment to reflect changing conditions and to promote the efficient operation of the trust and the achievement of trust purposes. A provision for majority control, as in corporate organizations, is a practical and effective means of facilitating business operations.

We think the fact that the holders of the business trust shares are testamentary trustees does not affect the applicability of the general rule in this case. We find no indication in Clarke's will that he considered the testamentary trust and the business trust as other than separate and distinct entities.[4] The business trust had been in existence for almost thirty years prior to Clarke's death. The trust instrument provides that the business trustees "shall have exclusive and absolute management of the property real and personal at any and all times held by them under this trust." He recognized that the principal asset of the testamentary trust would be the business trust shares. However, he expressly gave his testamentary trustees the power to dispose of any or all of his estate. The testamentary trustees had complete power of management of the testamentary trust assets, but the relevant asset here is the trust shares and not the trust itself as a business organization. The testamentary trustees may retain or dispose of any or all of the trust shares and fully exercise all powers granted them as shareholders of the trust, but there is no indication that Clarke intended that his testamentary trustees manage the business trust itself, nor do they have a duty as testamentary trustees to do

[4] Clarke's will contains no provision regarding appointment of business trustees. Vacancies among the business trustees are to be filled according to the terms of the business trust instrument. While there has for many years been an identity of trustees, this result was produced by the action of the trustees and through no command of the testator.

so apart from their duty to manage the trust shares as shareholders for the benefit of the testamentary trust.

The cases cited by the plaintiff in support of his contentions are inapposite. *Sherry* v. *Little,* 341 Mass. 224 (1960), involved an agreement between cotrustees to distribute their powers in a manner which directly contravened the express intent of the testator. In *Shattuck* v. *Wood Memorial Home, Inc.,* 319 Mass. 444 (1946), and *Morville* v. *Fowle,* 144 Mass. 109 (1887), the testamentary trustees were held to have invalidly delegated the accomplishment of the testamentary trust purposes to a corporation formed after the death of the testator in a manner which manifestly deprived the trustees of the power over the trust assets which the testator intended. In the case now before us, the testamentary trustees retain the control which Clarke intended, and we conclude that the 1942 amendment is valid and that a majority of the business trustees may act to bind the trust.

As to the second issue presented, while a majority vote of the trustees may bind the trust, all trustees must be adequately consulted and must participate in business transactions involved in the administration of the trust. See, e.g., *McMahon* v. *Krapf,* 323 Mass. 118 (1948); *Morville* v. *Fowle, supra; Heard* v. *March,* 12 Cush. 580, 584 (1853). We have reviewed the record in this case and conclude that, on the basis of the undisputed facts before him, the trial judge properly concluded that the plaintiff was adequately consulted regarding the proposed transactions in question and encouraged to participate in the negotiations.

We have examined the remaining contentions of the plaintiff and the guardian ad litem and find them to be devoid of merit. Accordingly, the judgment of the Probate Court is affirmed.

*So ordered.*